UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-------------------------------------------------------------- x

UNITED STATES OF AMERICA,           :

                                   :

                                   :

          v.                        :

                                   :         19-CR-144 (SFR)

                                   :

KENDALL HOOKS,                   :

                                   :

               Defendant.      :

-------------------------------------------------------------- x

**RULING AND ORDER GRANTING REDUCTION IN SENTENCE**

     Kendall Hooks was sentenced in 2022 to a 66-month term of imprisonment in the custody of the Bureau of Prisons ("BOP") followed by five years of supervised release. After graduating from the BOP's Residential Drug Abuse Program at the Federal Correctional Institution in Danbury, Connecticut ("FCI Danbury"), the BOP transferred Hooks on July 22, 2025 to a halfway house, where he remains in BOP custody. Hooks has nine months remaining on his custodial sentence. Hooks now moves for his custodial sentence to be reduced to time-served such that he can begin his five-year term of supervised release. The government does not oppose this motion. For the reasons stated below, I grant Hooks' motion and order that he be released immediately to home detention on supervised release.

**I.**     <u>**BACKGROUND**</u>

     Hooks was one of 22 co-defendants accused in 2019 of conspiracy to possess and distribute narcotics, among other offenses. On August 20, 2021, Hooks pleaded guilty to conspiring to possess and distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 846. ECF No. 609. The offense carried a five-year mandatory minimum

term of imprisonment. *Id.* at 2. After calculating a guidelines range of 77 to 96 months, ECF No. 964-1, at 37-38, the Court[1] imposed a 66-month term of imprisonment. ECF No. 813.

In the years leading up to his sentencing, Hooks' health began to deteriorate: he was diagnosed with diabetes and heart disease. ECF No. 964-1, at 24; ECF No. 762, at 2-3. Hooks' health has not improved since he was sentenced. While he received a C-pap machine to treat his sleep apnea, the machine was not functional for many months. ECF No. 964, at 15. Hooks was hospitalized in November 2024, ECF No. 964, at 6, and again in May 2025 for heart problems, *id.* at 8.

Meanwhile Hooks' mobility is even more limited now than it was when he was sentenced in 2022. At the time of sentencing, Hooks weighed 360 pounds. *Id.* at 6. As of December 2024, he weighed 362 pounds. ECF No. *Id.* at 6. But his doctors have struggled to address his weight in the midst of other health challenges that have emerged: after Hooks experienced knee pain, his providers (1) advised that he modify his diet and increase activity while (2) imposing a temporary activity restriction. *Id.* at 7. Hooks now requires a wheelchair or walker to move. *Id.* at 8, 14.

Notwithstanding these serious health concerns, Hooks has successfully completed a variety of rehabilitative programs since he was incarcerated in 2019. *Id.* at 8. He was described by his supervisors in one prison program as "an exceptional worker who completes his job without any issues" and commended on his "good attitude." *Id.* at 8. Hooks completed sensitive and challenging assignments, including serving as a "suicide watch companion" to assist

---

[1] The Honorable Vanessa Bryant, United States District Judge.

medical staff in identifying and managing incarcerated individuals at risk of self-harm. *Id.* at 9-10.

Most recently, Hooks completed the Residential Drug Abuse Program (RDAP) at FCI Danbury. *Id.* at 10. Hooks' caseworker complimented him on his "outstanding job being receptive to feedback" and his commitment to becoming "active in his treatment." *Id.* at 12. Following his graduation from the program, Hooks was transferred to a halfway house on July 22, 2025. *Id.*

Hooks proposes that he be released to home detention to live with his significant other in Manchester, Connecticut. *Id.* at 12. His first priority upon release will be securing health insurance and seeking specialist care to treat his acute and chronic health conditions. *Id.* He anticipates applying to participate in the federal court's Reentry Court and has been offered employment at a family-owned business. *Id.* He hopes to accept that employment if he is medically well enough to do so. *Id.*

## II.    <u>LEGAL STANDARD</u>

A district court may reduce a defendant's otherwise final term of imprisonment after considering the purposes of sentencing set out at 18 U.S.C. § 3553(a) if it finds "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the sentencing commission." 18 U.S.C. § 3582(c)(1)(A). A defendant is eligible for a sentence reduction only after exhausting administrative remedies. *Id.*

III.    **DISCUSSION**

Hooks submits—and the Government does not dispute—that a sentence reduction is appropriate here.[2] I agree.

I begin by addressing the extraordinary and compelling reasons that support a sentence reduction. The Second Circuit has held that district courts may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Brooker*, 976 F.3d 228, 237 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* at 237-38 (citing 28 U.S.C. § 994(t)).

In 2023, the Sentencing Commission issued new guidance regarding motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *See United States v. Jackson*, No. 3:10-CR-227 (KAD), 2025 WL 1029866, at *2 (D. Conn. Apr. 7, 2025) (discussing the Commission's process to update its policy statement after the passage of the First Step Act). Under the Commission's Policy Statement, medical circumstances support sentence reduction where the defendant is (1) "suffering from a serious physical or medical condition" that (2) "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(B). In addition, medical circumstances support a sentence reduction where "[t]he defendant is suffering from a medical condition that requires long-term or

---

[2] Hooks properly exhausted this claim by submitting a letter to the Warden of FCI Danbury. ECF No. 964-2.

specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Id.* § 1B1.13(b)(1)(C). Even if a single medical condition does not qualify under U.S.S.G. § 1B1.13(b)(1), a combination of medical conditions can present circumstances "similar in gravity" to a qualifying medical condition to support sentence reduction. *Id.* § 1B1.13(b)(5). In addition, although rehabilitation cannot serve as the sole basis for resentencing, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.* § 1B1.13(d).

Hooks has demonstrated that he has serious medical conditions that impair his ability to provide self-care in a correctional facility. Hooks' severe obesity has caused other medical problems, including a knee injury that requires him to use a walker and a wheelchair. His lack of mobility substantially diminishes his ability to provide self-care in a correctional environment of a prison or halfway house. In addition, Hooks has demonstrated that his complex and serious health needs have not been adequately treated while in BOP custody and that he remains at "risk of serious deterioration in health" while these needs remain unmet. As his memorandum asserts, Hooks has been waiting months for an urgent consultation with a cardiologist and an MRI, and these appointments remain unscheduled. For many months he has been without a functioning C-pap machine. In the past year alone, he has been hospitalized twice for heart issues. Although Hooks moved from FCI Danbury to a halfway house on July 22, 2025, counsel represents that the halfway house is not designed to accommodate his serious medical needs. Furthermore, while at the halfway house, Hooks would be required to rely on the BOP for approval and coordination of all of his medical care, which poses a substantial risk of delaying essential care. In contrast, while on supervised release, Hooks will be able to

apply for state insurance and his significant other can assist in coordinating his care and taking him to appointments.

Hooks has also displayed admirable progress towards rehabilitation. Hooks has received no disciplinary tickets while in federal custody during this term of imprisonment. He earned the trust of his supervisors while completing a variety of challenging prison jobs. He recently graduated from the RDAP program. And he has proposed a stable release plan that will permit him to continue to grow with support from family and his treatment providers. Thus, in consideration of Hooks' serious, unmet health needs, together with his substantial progress towards rehabilitation since he was sentenced, I conclude that extraordinary and compelling reasons support a sentence reduction.

I further conclude that Hooks' sentence—as modified—is consistent with the purposes of punishment a court must consider in fashioning a sentence. The purposes of sentencing enumerated by 18 U.S.C. § 3553(a) can be summarized broadly as encompassing "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 564 U.S. 319, 325 (2011). These purposes of punishment are not undermined by eliminating the need for Hooks to serve an additional nine months in a halfway house on top of the six years he has already spent in prison since he was arrested in 2019. I conclude that this modest change in the form of Hooks' sentence will not undercut the general or specific deterrent effect of a prison sentence. Similarly, I conclude that it will not lighten the already severe price that Hooks has paid for his behavior. In contrast, as previously stated, I find that permitting Hooks to transfer to home detention now will support his rehabilitation by allowing him to promptly reestablish a relationship with the medical providers who will serve him for the rest of his life and begin

a consistent course of treatment for the serious health conditions he has been unable to treat while in BOP custody.

Hooks is now 53 years old. His peers in prison clearly recognized him as a leader. I urge him to apply those skills to contribute to society—and to play a positive role in the lives of his family and friends.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Hooks' motion is granted and the term of imprisonment on Count 1 of the Indictment is reduced to time served. Hooks shall be released as soon as practicable, but no later than 5 p.m. on July 25, 2025.

Upon his release from custody, Hooks shall begin serving the five-year term of supervised release according to the standard and mandatory conditions set forth in the Judgment imposed on May 11, 2022, but the conditions of supervised release are modified as follows: Hooks shall reside at the residence of Doris Perry or the residence of another family member approved by Probation. Upon his release, Hooks shall travel directly from the halfway house to this residence. Hooks shall be on home detention for the first six (6) months of supervised release. Hooks will be permitted to leave the residence only for employment, religious services, medical treatment, or for other reasons approved in advance by United States Probation Office. He shall be subject to location monitoring for the first six (6) months of supervised release by whatever technology is deemed appropriate by United States Probation Office.

**SO ORDERED.**

New Haven, Connecticut
July 24, 2025

_/s/Sarah F. Russell_
SARAH F. RUSSELL
United States District Judge